Beth E. Terrell, CSB #178181
Email: bterrell@tmdwlaw.com
Michael D. Daudt, CSB #161575
Email: mdaudt@tmdwlaw.com
Mary B. Reiten, CSB #203142
Email: mreiten@tmdwlaw.com
Whitney B. Stark, CSB #234863
Email: wstark@tmdwlaw.com
TERRELL MARSHALL DAUDT
 & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

SHAHAR LUSHE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERENGO, INC. d/b/a VERENGO SOLAR,

Defendant.

NO. 2:13-cv-7632 ABC RZx

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW**

HON. AUDREY B. COLLINS

Complaint Filed: October 16, 2013

DATE: March 24, 2014
TIME: 10:00 a.m.

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 1
CASE NO. 2:13-CV-7632 ABC RZX

|   |   | LOCATION: Courtroom 680 |
|---|---|---|
|   |   | Los Angeles - Roybal |

Plaintiff submits his response to Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendant's Motion for Summary Judgment. Plaintiff also submits a Statement of Genuine Disputes in support of his opposition to Defendant's summary judgment motion (Section II, below) and Conclusions of Law (Section III, below).

### I. PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

Plaintiff responds to Defendant's Statement of Facts as follows:

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Plaintiff alleges and represents that, on July 30, 2013, he received a single telephone call (the "Call") to his mobile phone.<br><br>Complaint ¶ 5.3; Declaration of Ana Tagvoryan ("Tagvoryan Decl.") ¶ 4, Ex. A. | Undisputed. |
| 2. | Verengo did not make or initiate any calls to Plaintiff.<br><br>Declaration of David Schotz ("Schotz Decl.") ¶ 6. | Undisputed that Verengo did not physically place the call to Mr. Lushe.<br><br>Disputed as to whether Verengo initiated the call to Mr. Lushe. Verengo hired Call to Action Teleservices, LLC ("CTA") to place calls on its behalf and for its benefit and in specific zip code |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 2
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  |  | areas.  Declaration of Whitney Stark in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Stark Decl."), Ex. 1[1]; Ex. 35 (Deposition of William Padilla, Verengo's Director of Call Center Operations) ("Padilla Dep.") at 20:10-12; 23:17-24:2. |
| 3. | Verengo's sales representatives have never spoken with Plaintiff.<br>Schotz Decl. ¶ 6. | Undisputed and not material. |
| 4. | Plaintiff has never purchased any product or service from Verengo.<br>Schotz Decl. ¶ 6. | Undisputed that Mr. Lushe did not have an established business relationship with Verengo. |
| 5. | The telephone number from which the alleged Call originated belongs not to Verengo but a third party, Call to Action, LLC ("Call to Action").<br>Schotz Decl. ¶ 7; Tagvoryan Decl. ¶ 4, Ex. B. | Disputed.  While it is undisputed that CTA did not physically place the call, it is also true that when it obtained a Lead for Verengo, CTA transferred the call on a dedicated telephone phone number to Verengo's call center. Ex. 1 at § 1.d; *see also* Ex. 4; Padilla Dep. at 59:24-60:9. |
| 6. | Verengo contracted with Call to Action in July 2013 to procure qualified leads for Verengo's solar | Undisputed that Verengo contracted with CTA in July 2013 to engage in telemarketing on its |

---

[1] Hereinafter all references to Exhibits or "Ex." are Exhibits attached to the Stark Decl.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
SEPARATE STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S
STATEMENT OF GENUINE DISPUTES, AND
PLAINTIFF'S CONCLUSIONS OF LAW - 3
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  | photovoltaic systems, using reasonable and suitable marketing methods, strictly subject to applicable law (the "Contract").<br><br>Schotz Decl. ¶¶ 5, 8, 11, Ex. A, § 8. | behalf.<br><br>Disputed that Verengo required CTA to use "reasonable and suitable marketing methods subject to applicable law." Verengo never discussed "reasonable and suitable marketing methods" or "applicable law" with CTA. Padilla Dep. at 58:10-25.<br><br>The "Representations and Warranties" section of the contract between the parties, the Solar Leads Agreement ("Agreement"), only provides that the parties are currently in compliance with federal and state law for purposes of warranting their authority to sign the contract. It does not require CTA to warrant its compliance with federal or state law as part of the calling campaign. Ex. 1 at § 8. |
| 7. | Verengo required Call to Action to warrant that it was in compliance with all applicable federal and state laws.<br><br>Schotz Decl. ¶¶ 5, 11, Ex. A, § 8. | Disputed. The "Representations and Warranties" section of the contract between the parties, the Solar Leads Agreement ("Agreement"), only provides that the parties are currently in compliance with federal and state law for purposes of warranting |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
SEPARATE STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S
STATEMENT OF GENUINE DISPUTES, AND
PLAINTIFF'S CONCLUSIONS OF LAW - 4
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  |  | their authority to sign the contract. It does not require CTA to warrant its compliance with federal or state law as part of the calling campaign. Ex. 1 at § 8 |
| 8. | Verengo did not direct, control, advise, or oversee Call to Action's efforts in generating leads, or the manner and means by which it was done.<br><br>Schotz Decl. ¶¶ 9-12, Ex. A. | Disputed. Verengo had the right to control CTA's calling campaign and it exercised that right. Verengo authored the Agreement and was master of its content. Verengo also controlled the Lead criteria, reviewed and provided input into the script before any Calls were made, engaged in frequent communication with CTA regarding the campaign, was given call recordings by CTA to monitor Lead quality, provided a dedicated telephone number for transferring calls to its call center, and required that CTA provide exclusive Leads to it. Exs. 1 at §§ 1.d, 2.2; 2; 10-14; 15; 17-20; Padilla Dep. at 46:25-47:7; 48:24-49:5; 59:24-60:9. |
| 9. | The Contract does not provide Verengo rights to control the manner or means by which Call to Action would make any outbound telemarketing calls. | Disputed. Verengo authored the Agreement and was master of its content. The Agreement neither grants nor denies Verengo a right to control the technology for making outbound telemarketing |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 5
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | Schotz Decl. Ex. A. | calls used by CTA. Ex. 1. The scope of the Agreement includes the ability to use prerecorded calls, which in certain circumstances are legal. *Id.* |
| | | The Agreement provided Verengo with the right to control CTA's calling campaign and it exercised that right. Verengo required that Leads meet detailed criteria, reviewed and provided input into the script, engaged in frequent communication with CTA regarding the campaign, had the right and the ability to monitor Lead quality, provided a dedicated telephone number on which to transfer calls to its call center, and required CTA to provide exclusive leads to it. Exs. 1 at §§ 1.d, 2.2; 2; 10-14; 15; 17-20; Padilla Dep. at 46:25-47:7; 48:24-49:5; 59:24-60:9. |
| 10. | The contract did not specify what technology was to be used in making any such calls.<br><br>Schotz Decl. Ex. A. | Undisputed. However, Mr. Lushe disputes the inference that Verengo seeks, which is that the absence of such language implies Verengo had no control over CTA. Verengo authored the Agreement, providing it with the opportunity to control the method and manner of CTA's calls. |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 6
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
|  |  | Padilla Dep. at 28:18-19. It chose not to. |
| 11. | The contract does not specify what procedures were to be followed in determining what telephone numbers may be dialed, other than that such procedures comply with applicable state and federal law. Schotz Decl. Ex. A. | Disputed. The Agreement requires that calls be made only to zip code areas provided by Verengo. Exs. 1 at §2.2(a); 23-25; Padilla Dep. at 73:22-25. Further, the "Representations and Warranties" section of the Agreement only provides that the parties have the authority to sign the contract. It does not require CTA to warrant its compliance with federal or state law during the calling campaign. *Id.*, Ex. 1 at § 8. |
| 12. | Call to Action was in charge of drafting and in fact did draft the script it would use to perform the services under the Contract. Schotz Decl. ¶ 9. | Disputed. Verengo provided Lead criteria for the script and reviewed the script before it was used by CTA. Padilla Dep. at 46:25-47:7; 48:24-49:5. |
| 13. | Verengo never approved, instructed or requested Call to Action to specifically call Plaintiff. Schotz Decl. ¶ 10. | Disputed. Verengo controlled the scope of the calling campaign by requiring calls be made only in specific zip code areas. Exs. 1 at §2.2(a); 23-25; Padilla Dep. at 73:22-26. Verengo also incentivized CTA maximize the number of cold calls it made. *Id.*, Exs. 1 at § 3; 5-8, 21-22, 42-43. |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 7
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 14. | Verengo has never requested, authorized, or directed that Call to Action place calls using a prerecorded voice. Schotz Decl. ¶ 12. | Disputed. Verengo never discussed the use of prerecorded voice message calls with CTA. Padilla Dep. 58:10-25. Prerecorded message calls may be legal in certain circumstances, and the scope of the Agreement encompasses such use as it fails to limit the technology that CTA used to contact potential Leads. *See* Ex. 1. |
| 15. | Verengo did not have knowledge of the creation or dissemination of any pre-recorded calls by Call to Action. Schotz Decl. ¶ 12. | Disputed. Verengo and CTA agreed to share resources to ensure call quality, such as call recordings. Ex. 1 at § 5; Padilla Dep. at 40:3-41:13. CTA provided Verengo with call recordings, which Verengo could have reviewed to determine whether calls were being made in violation of the TCPA. Padilla Dep. at 67:8-69:1; 83:9-17. Verengo's excuse, that the recordings did not work, is undermined by the ease with which Mr. Lushe's counsel has been able to download and listen to them. Declaration of Rachel Hoover in Support of Plaintiff's Opposition to Motion for Summary Judgment ¶¶ 2-10. Moreover, nothing in the |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 8
CASE NO. 2:13-CV-7632 ABC RZX

| NO | DEFENDANT'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | | correspondence produced by Verengo reflects any complaints by Verengo that the recordings could not be accessed. Exs. 15-20; 36-40. |

## II. PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

Plaintiff identifies the following additional material disputed facts and identifies the following supporting evidence for each such material fact.

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Mr. Lushe's Complaint specifically alleges theories of vicarious liability. | Dkt. 1 at ¶¶ 1.1, 5.4, 6.1; Dkt. 21-2, Ex. A at ¶¶ 5.2-4; 5.19. |
| 2. | On July 30, 2013, Mr. Lushe received an unsolicited call on his cellular telephone that consisted of a pre-recorded message. | Declaration of Shahar Lushe in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Lushe Decl.") ¶¶ 2-4. |
| 3. | Mr. Lushe understood the call to be authorized by a seller seeking to sell him a product or products. | Lushe Decl. ¶ 4. |
| 4. | The call to Mr. Lushe was placed by CTA, a vendor hired by Verengo for telemarketing purposes. | Declaration of David Schotz in Support of Defendant's Motion for Summary Judgment ("Schotz Decl.") ¶¶ 7-8. |
| 5. | Verengo hired CTA pursuant to a | Ex. 1; Schotz Decl. ¶ 8. |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 9
CASE NO. 2:13-CV-7632 ABC RZX

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
|  | Solar Leads Agreement dated July 1, 2013. |  |
| 6. | CTA acted under the Solar Leads Agreement from July 1, 2013 to August 28, 2013. | Ex. 1; Schotz Decl. ¶ 8. |
| 7. | In addition to CTA, Verengo contracts with other vendors to make telemarketing calls to generate Leads. | Schotz Decl. ¶ 5 |
| 8. | Proposed named plaintiff William Youngblood received two calls made on behalf of Verengo that consisted of prerecorded messages. | *See* Dkt. 21-2, Ex. A at 5.10-15; Declaration of William Youngblood in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Youngblood Decl.") ¶ 2. |
| 9. | Mr. Youngblood understood the calls to be solicitation calls authorized by Verengo. | Youngblood Decl. ¶ 5. |
| 10. | Mr. Youngblood received the calls in late January and early February 2014, after the CTA calling campaign had terminated. | *Id.*; Schotz Decl. ¶ 8. |
| 11. | During one of the calls, Mr. Youngblood spoke with an employee of Verengo and complained about the call he received. | Youngblood Decl. ¶ 4. |
| 12. | In addition to Mr. Lushe and Mr. Youngblood, Verengo caused other individuals to receive calls soliciting | Declaration of Desiree Franklin in Support of Plaintiff's Opposition to Defendant's Motion for |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 10
CASE NO. 2:13-CV-7632 ABC RZX

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | their business. | Summary Judgment ("Franklin Decl.") ¶¶ 2-4; Declaration of Armin Rosencranz in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Rosencranz Decl.") ¶¶ 2-5; Declaration of Mary Ann Nihart in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Nihart Decl."), ¶¶ 2-5. |
| 13. | Those individuals understood that they received telemarketing calls authorized by Verengo. | Franklin Decl. ¶ 3; Rosencranz Decl. ¶ 3, Nihart Decl. ¶3. |
| 14. | Verengo authored the Agreement between it and CTA. | Padilla Dep. at 32:11-13. |
| 15. | Verengo did not conduct any research into CTA's background or review its marketing materials before hiring it. | Padilla Dep. at 22:4-11, 22:22-23:12; 24:12-25:7. |
| 16. | Verengo did not inquire what type of telephone technology CTA would use, and it did not provide CTA with any instructions regarding compliance with the TCPA. | Padilla Dep. at 58:10-25. |
| 17. | Verengo did not discuss the TCPA or compliance with the TCPA with CTA at all. | Padilla Dep. at 58:10-25. |
| 18. | Verengo relied solely on the fact that CTA had been in business 2-3 years before hiring it to perform | Padilla Dep. at 24:12-25:7 |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 11
CASE NO. 2:13-CV-7632 ABC RZX

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | telemarketing services. | |
| 19. | Verengo did not provide CTA with a list of individuals with whom it had an established business relationship or from whom it had received express consent to be contacted for sales. | Padilla Dep. at 55:25-56:8. |
| 20. | Nothing in the Agreement required CTA to warrant its compliance with federal or state law during the pendency of the calling campaign. | Ex. 1. |
| 21. | In the Agreement, Verengo required CTA to provide exclusive leads to it. | Ex. 1 at § 4. |
| 22. | The Agreement defines a "Lead" as the transfer of a live caller, and data collected from that caller, to Verengo's Leads Management System. | Ex. 1 at § 2.1. |
| 23. | For a Lead to be compensable to CTA, Verengo required that the Lead: (1) be a home owner within a zip code provided by Verengo; (2) speak English; (3) not receive any assistance with his or her utility bill; (4) average a minimum of a precise amount on his or her utility bills depending on the specific provider and location; (5) reside in a detached single family home; (6) be interested in photovoltaic residential solar energy; and (7) have a FICO score | Ex. 1 at § 2.2; Padilla Dep. at 37:23-38:10; 73:22-25. |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 12
CASE NO. 2:13-CV-7632 ABC RZX

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
|  | greater than 700. |  |
| 24. | Verengo provided zip code lists, and updated those zip code lists, to target customers in specific areas. | Ex. 1 at § 2.2(a); 23-25; 26 (requesting that Verengo consider revising the screening criteria to expand the number of Leads generated). |
| 25. | CTA posted Lead information to Verengo's system and transferred Leads directly to Verengo's call center on a dedicated telephone number provided by Verengo. | Ex. 1 at § 1.d; *see also* Ex. 4; Padilla Dep. at 59:24-60:9; 61:2-25. |
| 26. | Verengo reviewed and gave input into the script before it was used to call potential Leads. The script contained Verengo's name in at least two places. | Ex. 2; Padilla Dep. at 46:25-47:7; 48:24-49:5. |
| 27. | The Agreement provided that Verengo and CTA would share resources to ensure call quality, such as call recordings. | Ex. 1 at § 5; Padilla Dep. at 40:3-41:13. |
| 28. | Verengo communicated frequently with CTA regarding the campaign, Leads, and technical issues. | Exs. 3 (requesting that CTA remind its team that leads cannot live in Arizona); 9 (discussing technical issues with posting leads to Verengo's system); 10-12 (coordinating meetings between Verengo and CTA). |
| 29. | Verengo regularly reviewed and monitored the CTA call campaign. | Exs. 15 (requesting that Verengo "circle the wagons at the end of each day to go over the call |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 13
CASE NO. 2:13-CV-7632 ABC RZX

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
|  |  | quality and any issues that you may have so that we can fix immediately"); 16 (discussing review of Lead quality); 18 (discussing regular reporting regarding call quality); 19 (discussing reviewing Leads); 20 (discussing "going over the leads"). |
| 30. | Verengo received call recordings from CTA, but never reviewed them. | Padilla Dep. at 67:8-69:1. |
| 31. | Verengo's claim that it was unable to review the call recordings is undermined by the ease with which Plaintiff's counsel accessed them. | Hoover Decl. ¶¶ 2-4. |
| 32. | None of the documents produced by Verengo in discovery reflect any complaints by Verengo that the recordings were not accessible. | Ex. 15-20; 36-40. |
| 33. | Had Verengo reviewed the call recordings they would have caused concern because Mr. Padilla does not know whether calls to cell phones are permissible. | Padilla Dep. at 109:11-110:3. |
| 34. | Verengo paid CTA at least $90 per Lead. | Ex. 1 at § 3.1; Exs. 5-8; 21-22; 42-43. |
| 35. | Verengo received 114 Leads from CTA. | Exs. 5-8; 21-22; 42-43; Padilla Dep. at 90:6-23. |
| 36. | Verengo made six sales of $49,000 as | Padilla Dep. at 90:6-23. |

PLAINTIFF'S RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S STATEMENT OF GENUINE DISPUTES, AND PLAINTIFF'S CONCLUSIONS OF LAW - 14
CASE NO. 2:13-CV-7632 ABC RZX

| NO | PLAINTIFF'S ADDITIONAL MATERIAL DISPUTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | a result of the Leads from CTA. | |
| 37. | Verengo knew that it hired CTA to engage in telemarketing targeted to specified zip codes. | Padilla Dep. at 20:10-12; 23:17-24:2. |
| 38. | Verengo knew that it incentivized CTA to maximize the number of cold calls it made. | Exs. 1 at §§ 3, 8; 5-8; 21-22; 42-43; Padilla Dep. at 58:10-19. |
| 39. | Verengo knew that individuals who received calls made on Verengo's behalf complained about the method and manner of these calls. | Exs. 1 at § 3; 23-25; Youngblood Decl. ¶ 4; Rosencranz Decl. ¶ 4; Nihart Decl ¶ 3. |

### III. CONCLUSIONS OF LAW

1. Mr. Lushe's complaint provides sufficient notice to Verengo that he seeks to hold it vicariously liable for robocalls made on its behalf. *See, e.g.*, Dkt. 1, ¶¶ 1.1, 5.4, 6.1; *see also Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987) ("[a]s a matter of law, allegations of agency, vicarious liability and/or *respondeat superior* are not required [in a complaint]."). Additionally, Mr. Lushe's proposed First Amended Complaint specifically alleges theories of vicarious liability. *See* Dkt. 21-2, Ex. A at ¶¶ 5.2-4; 5.19.

2. A defendant may be liable under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA") under federal common law principles of agency for violations of the TCPA committed by third parties acting on its behalf. *In re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6574, 6584 (2013) ("FCC 2013 Ruling").

3. Agency liability exists where a principal "manifests assent" to an

PLAINTIFF'S RESPONSE TO DEFENDANT'S
SEPARATE STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S
STATEMENT OF GENUINE DISPUTES, AND
PLAINTIFF'S CONCLUSIONS OF LAW - 15
CASE NO. 2:13-CV-7632 ABC RZX

agent that the agent act on behalf of the principal, and subject to the principal's control, the agent consents to act. Restatement (Third) of Agency § 1.01 (2006). An agency relationship requires only that the principal have the right to control the agent's work. *Schmidt v. Burlington N. and Santa Fe Ry. Col.*, 605 F.3d 686, 691 (9th Cir. 2010).

4. Sufficient disputed, material facts exist as to whether Verengo and CTA had an agency relationship, including the extent to which Verengo had the right to and did control the CTA calling campaign. Thus, summary judgment is inappropriate on an agency theory of vicarious liability.

5. Apparent authority exists where a third party "reasonably believes the actor has authority to act on behalf the principal" and that belief is "traceable" to the principal's manifestations. Restatement (Third) of Agency § 2.03 (2006).

6. Sufficient disputed, material facts exist as to whether CTA had apparent authority to act for Verengo. Disputed facts include the extent of Verengo's permission to CTA to engage in telemarketing on its behalf and for its benefit; Verengo's authorization to use and use of its name in the telemarketing calls, and Verengo's requirement that CTA provide it exclusive leads. Thus, summary judgment is inappropriate on an apparent authority theory of vicarious liability.

7. Ratification exists where the principal "manifests assent" or engages in conduct that creates a "reasonable assumption" that the principal consents. Restatement (Third) of Agency §4.01 (2006). Ratification requires only that the principal consent or conduct indicative of consent. Restatement (Third) of Agency §4.01 cmt. b.

8. Sufficient disputed, material facts exist as to whether Verengo

PLAINTIFF'S RESPONSE TO DEFENDANT'S
SEPARATE STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S
STATEMENT OF GENUINE DISPUTES, AND
PLAINTIFF'S CONCLUSIONS OF LAW - 16
CASE NO. 2:13-CV-7632 ABC RZX

ratified CTA's acts. This evidence includes whether Verengo consented to CTA's telemarketing campaign, had knowledge of all material facts related to the campaign, benefited from the CTA campaign, and failed to disavow CTA's illegal acts. Thus, summary judgment is inappropriate on a ratification theory of vicarious liability.

9. Additionally, Verengo's Motion for Summary Judgment may be denied pursuant to Fed. R. Civ. P. 56(d) because Verengo failed to produce evidence essential to Mr. Lushe's opposition.

RESPECTFULLY SUBMITTED AND DATED this 10th day of March, 2014.

TERRELL MARSHALL DAUDT
& WILLIE PLLC

By: /s/ Mary B. Reiten, CSB #203142
Beth E. Terrell, CSB #178181
Email: bterrell@tmdwlaw.com
Michael D. Daudt, CSB #161575
Email: mdaudt@tmdwlaw.com
Mary B. Reiten, CSB #203142
Email: mreiten@tmdwlaw.com
Whitney B. Stark, CSB #234863
Email: wstark@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
SEPARATE STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S
STATEMENT OF GENUINE DISPUTES, AND
PLAINTIFF'S CONCLUSIONS OF LAW - 17
CASE NO. 2:13-CV-7632 ABC RZX

<u>CERTIFICATE OF SERVICE</u>

I, Mary B. Reiten, hereby certify that on March 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Joshua M. Briones, CSB #205293
>Email: joshua.briones@dlapiper.com
>Ana Tagvoryan, CSB #246536
>Email: ana.tagvoryan@dlapiper.com
>Esteban Morales, CSB #273948
>Email: esteban.morales@dlapiper.com
>DLA PIPER LLP (US)
>2000 Avenue of the Stars
>Suite 400 North Tower
>Los Angeles, California 90067-4704
>Telephone: (310) 595-3000
>Facsimile: (310) 595-3300

*Attorneys for Defendant*

DATED this 10th day of March, 2014.

>TERRELL MARSHALL DAUDT
>& WILLIE PLLC
>
>
>By: /s/ Mary B. Reiten, CSB #203142
>Mary B. Reiten, CSB #203142
>Email: mreiten@tmdwlaw.com
>936 North 34th Street, Suite 300
>Seattle, Washington 98103-8869
>Telephone: (206) 816-6603
>Facsimile: (206) 350-3528

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT'S
SEPARATE STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW, PLAINTIFF'S
STATEMENT OF GENUINE DISPUTES, AND
PLAINTIFF'S CONCLUSIONS OF LAW - 18
CASE NO. 2:13-CV-7632 ABC RZX