UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV13-07632 AB (RZ) | Date | October 22, 2014 |
|---|---|---|---|

| Title: | *Shahar Lushe v. Verengo Inc.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR. |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order DENYING Motion for Summary Judgment

Before the Court is Defendant Verengo, Inc.'s ("Defendant") Motion for Summary Judgment ("Motion," docket nos. 19, 42). Plaintiffs Shahar Lushe and William Youngblood ("Plaintiffs") filed an Opposition and Defendant filed a Reply. The Court will resolve the Motion without oral argument and therefore **VACATES** the hearing set for October 27, 2014. For the following reasons, the Court **DENIES** the Motion.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant markets, sells, and installs residential solar power systems. In 2013, Defendant hired third party telemarketers Call to Action ("CTA") and MOV-Digial Media ("MOV") to generate leads. Plaintiffs' First Amended Complaint ("FAC") alleges that they received phone calls on Defendant's behalf that violated the Telephone Consumer Privacy Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and alleges three putative class action claims against Defendant.

---

1  The Court also **DENIES** Defendant's Motion to Strike Plaintiffs' Response to Defendant's Evidentiary Objections (docket no. 65).

The first claim, on behalf of Lushe and the nationwide Cellular Class, is for violating 47 U.S.C. § 227(b)(1)(A), which states in relevant part:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a cellular telephone service. . .

The second claim, on behalf of Youngblood and the nationwide Residential Class, is for violating 47 U.S.C. § 227(b)(1)(B), which prohibits making such calls (unauthorized calls using an automatic telephone dialing system or an artificial or prerecorded voice) to residential phones.  The third Claim, on behalf of Youngblood and the nationwide Do-Not-Call Subclass, is for violating 47 C.F.R. § 64.1200(c)(2), which prohibits any person or entity from making two more telephone solicitations in a twelve month period to residential phone numbers that are on the national do-not-call registry.

Defendant initially filed a Motion for Summary Judgment on February 14, 2014. (Docket no. 19.)   On March 4, 2104, Plaintiff Lushe filed a Motion for Leave to Amend Complaint.  (Docket no. 21.)   On March 21, 2014, the Court issued an Order granting the Motion for Leave to Amend, and continuing the Motion for Summary Judgment under Rule 56(d) to allow Plaintiff to conduct additional discovery.  (Docket no. 30.)   That Order is incorporated herein by reference.   The parties also stipulated to a discovery schedule and briefing schedule.

Defendant now renews the Motion for Summary Judgment.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Once the moving party satisfies its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial.   *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

Both the moving party and the adverse party must support their factual positions by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the fact."   Fed. R. Civ. P. 56(c)(1).

An issue of fact is genuine if it reasonably can be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). Furthermore, the "existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson*, 477 U.S. at 247-48. "The mere existence of a scintilla of evidence . . . will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for [the party opposing the motion]." *Anderson*, 477 U.S. at 252. The "opponent must do more than simply show there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *S. Cal. Gas Co.,* 336 F.3d at 254.

### III.   DISCUSSION

Defendant argues that Plaintiffs cannot establish that the single call Lushe received was made as part of Defendant's lead-generating campaign, and that therefore Defendant cannot be held liable for it. Defendant similarly argues that Plaintiff cannot show that the first call to Youngblood has any connection to Defendant, and that therefore Youngblood's § 227(c)(5) claim (which requires two or more calls) fails. As to all claims, Defendant contends that it cannot be held liable for the alleged TCPA violations because it neither made the calls itself, nor was it in an agency relationship with the third-party telemarketers that made the calls. Defendant also contends that it is eligible for safe harbor protection.

### A. Defendant's Argument that Plaintiffs Cannot Show that the Calls Were Made on Defendant's Behalf Is Incompletely Presented; the Motion on that Ground is therefore DENIED Without Prejudice.

Defendant argues that Plaintiffs cannot show that either the phone call Lushe received or the first phone call Youngblood received were made on Defendant's behalf. However, many of the facts that Defendant cites to support this position are presented only

in its brief and not in its Statement of Undisputed Facts ("DSUF," docket no. 42-2). *See* Opening Brief 14:1-15:7 (the facts supporting this argument, many of which are absent from the DSUF). Defendant's failure to include these facts in its DSUF violates Local Rule 56-1which states "Such proposed statement shall set forth the materials facts as to which the moving party contends there is no genuine issue." Presenting all material facts in the DSUF is important: it safeguards against obfuscation and overreaching by the moving party, ensures the opposing party recognizes the facts to which is must respond, and ensures that the facts are parsed out reasonably and presented in a format the opposing party and the Court can easily examine. Perhaps not coincidentally, Defendant has overreached in some of its characterizations of the evidence and Plaintiffs have not responded to all of the proffered facts. Omitting facts from a DSUF is a non-trivial error that the Court cannot overlook.

In addition, some of the facts and arguments that Defendant relies on for this part of the Motion appear for the first time in the Reply, such as the fact that Lushe's zip code does not appear on the list of zip codes Defendant provided to CTA (*see* Reply 4:15-19) and that Youngblood cannot prove that his number appears on the do-not-call registry (*see* Reply 6:22-24).[2]

Based on the foregoing, the Court concludes that this aspect of the Motion is incompletely presented and will not reach its merits. This part of the Motion is therefore DENIED, albeit without prejudice.

### B. Whether Defendant Was In an Agency Relationship with CTA or MOV-Solar

---

[2] In addition, neither party consistently cites the facts from their Statements in their briefs, but instead they often cite the underlying evidence. This also makes it difficult to determine what specific facts are being asserted and whether they are undisputed. And instead of responding fact-by-fact to the Additional Facts in Plaintiffs' Statement of Genuine Disputes and Additional Facts ("PAF," docket no. 45-7), Defendant simply filed objections to some of the evidence supporting those genuine disputes: this makes it difficult to ascertain whether Defendant challenges any of Plaintiffs' disputes factual assertions. Going forward, should another Motion for Summary Judgment be filed, both parties should make sure that: (1) all of the facts that they rely upon in their briefs are set forth individually in the Statement of Undisputed Facts or Statement of Genuine Issues; (2) that their briefs <u>cite the facts</u> in these Statements, rather than the underlying evidence; and (3) that they respond to each others' Statements fact-by-fact, rather than merely objecting to portions of the underlying evidence. If a fact is not in the Statement, or is not cited as a fact in the brief, it does not exist for purposes of the Motion. Finally, the Court urges the parties (and Defendant in particular) to properly tab the declarations in their courtesy copies so the Court can readily locate the declarations.

**Are Triable Issues of Fact.**

The plain language of the TCPA assigns civil liability to the party who "makes" a call. *See, e.g.*, 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States . . . to make any call . . ."). However, as noted in the previous Order, a seller that itself has not made a call within the meaning of the TCPA "nonetheless may be held vicariously liable under federal common law principles of agency for violations . . . that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC, et al.*, 28 F.C.C. Rcd. 6574, 6574 (2013). The FCC further explained that "[p]otential liability under general agency-related principles extend beyond classical agency" to include liability based upon apparent authority and ratification. *Id.* at 6587. The Ninth Circuit has recently confirmed that a defendant may be held vicariously liable for TCPA violations if the defendant was in an agency relationship with the party who placed the calls. *See Gomez v. Campbell-Ewald Co.*, 13-55486, 2014 WL 4654478 at *5 (9th Cir. Sept. 19, 2014) ("a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.").

It is undisputed that Defendant did not itself "make" the alleged telemarketing calls to either Lushe or Youngblood. *See* DSUF 2, 21; Statement of Genuine Disputes and Additional Facts ("PAF") 8. Rather, third-party telemarketers may have made these calls as part of a lead-generating campaign that Defendant contracted with them to undertake. For purposes of this argument, the parties and the Court assume that CTA and MOV made the calls. Plaintiffs contend that Defendant is vicariously liable for these calls because it was in an agency relationship with CTA and MOV. As the party asserting that an agency relationship exists, Plaintiffs have the burden of establishing its existence. *See* Restatement (Third) of Agency § 1.02 (2006) cmts. b and d (so stating). Plaintiffs argue that there are triable issues of fact as to all three species of agency: classical agency, apparent authority, and ratification. Defendant argues that there are no triable issues of fact as to agency. Before reaching the merits, the Court will briefly set forth the law concerning the three ways of establishing agency.

1. **Varieties of Agency**

"An agent is one who 'act[s] on the principal's behalf and subject to the principal's control.' To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) (citing Restatement (Third) Agency § 1.01). Thus, to establish classical agency, Plaintiffs must show "that the party designated as principal has the right to control the party designated as agent." Restatement (Third) of Agency §1.02 (2006) cmt. d. As applied to alleged TCPA violations, at least one court has characterized the control necessary to establish agency as being "control [over or] the right to control . . . the manner and means of the [marketing] campaign [the telemarketer] conducted." See *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) *aff'd*, 12-56458,

5

2014 WL 2959160 *2 (9th Cir. July 2, 2014) (agreeing "with the district judge's analysis of the evidence under the standard he applied").

"Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997). "[T]he ostensible authority of an agent cannot be based solely upon the agent's conduct." *C.A.R. Tranp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations. See Restatement (Third) of Agency § 2.03 (2006).

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01 (2006). A person ratifies an act by manifesting assent that the act shall affect the person's legal relations, or by conduct that justifies a reasonable assumption that the person so consents. *See Id.* Even when a party "manifests dissent to becoming bound by an act's legal consequences," a person's "knowing acceptance of the benefit of a transaction" can give rise to ratification. *Id.,* cmt. d. In the Ninth Circuit, agency through ratification presupposes an existing agency relationship. *See Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2008) ("a principal agent relationship is . . . a requisite [to ratification], and ratification can have no meaning without it.").

The Court has reviewed the entirety of the evidence, and finds that triable issues of fact preclude judgment for Defendant on all three varieties of agency.

### 2. Whether Defendant and CTA and MOV Were in a Classical Agency Relationship is a Triable Issue.

Defendant contends that CTA and MOV were mere contractors over which it did not exercise control sufficient to create a classical agency relationship. Indeed, the contracts between Defendant on one hand and CTA and MOV on the other do not affirmatively grant Defendant the right to exercise control over the manner and means by which CTA and MOV performed. However, the record includes at least the following evidence showing that Defendant nevertheless did involve itself in the manner and means by which CTA and MOV performed: Defendant reviewed, edited, and provided input for the scripts CTA and MOV used during their calls (PAF 26-29); CTA and MOV sent Defendant call recordings so that Defendant could review the callers' performance (PAF 31, 32, 34); Defendant provided performance-related feedback in response to some of the recordings (PAF 35). This involvement did not occur not once or twice: Defendant communicated with CTA and MOV regularly about the scripts and call quality. *See, e.g.*, PAF 46-48. Defendant also provided CTA and MOV with access to certain of its facilities, including dedicated phone lines by which CTA and MOV would transfer calls to Defendant and the ability to post lead information directly to Defendant's "system." PAF 25. The scripts that Defendant

provided, edited, and/or approved also mentioned Defendant by name. *See, e.g.*, PAF 26. And, the MOV script suggests that Defendant was aware that MOV was using an automatic dialing system – the use of which can be a TCPA violation. PAF 19. From the foregoing evidence, a jury could conclude that Defendant did not merely provide the parameters by which CTA and MOV were to perform, but instead exercised control over how they performed, and that such control was sufficient to create an agency relationship.

As to Plaintiff Youngblood's claim, Defendant contends that because MOV itself outsourced call placement to another entity – ePath Media, Inc. – it can't be liable unless Plaintiffs can show Defendant was in an agency relationship with ePath Media. However, the record includes evidence that Defendant knew MOV was outsourcing the placement of calls. *See* PAF 9. Indeed, an email shows that Defendant disapproved of one of MOV's intended subcontractors (a women's correctional facility) and MOV responded that it would not go forward with that subcontractor. *Id.* MOV also indicated that it would continue to use at least two other subcontractors. As a result, if a jury finds that Defendant and MOV were in an agency relationship, a jury could also find that Defendant authorized MOV to engage a subcontractor and accepted the legal consequences of that. Notably, the performance-related feedback that Defendant provided to MOV would ultimately be directed at the call centers whose employees placed the calls. If such involvement can be sufficient to create and agency relationship between Defendant and MOV were MOV making the calls itself, it stands to reason that the same involvement could also create an agency relationship between Defendant and the call centers, such as eParth. At a minimum, it would be premature to rule that this additional degree of remove insulates Defendant from any TCPA liability triggered by ePath.

Although the foregoing evidence is not overwhelming, it is sufficient to create a triable issue. None of Defendant's arguments persuade the Court that the foregoing evidence is somehow immaterial or insufficient. Defendant argues that its contract with CTA and MOV required CTA and MOV to promise that they would perform the contract in compliance with all applicable federal and state law, *see, e.g.*, DSUF 5, but the contracts contain no such provision. Rather, the contracts merely state that the parties thereto "warrant and represent to each other that it [sic] is in compliance with all applicable federal and state laws and that it has the right, power, and authority to enter into this Agreement." *See* Ps' Response to DSUF 5, Stark Decl. Exh. 1, § 8. This statement refers only to the parties' current compliance with all laws and their capacity to enter into a contract; it warrants nothing about how the parties would perform the contract.

Nor are the three cases that Defendant relies upon persuasive because they are all distinguishable. In *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012) *aff'd*, 12-56458, 2014 WL 2959160 (9th Cir. July 2, 2014), the Court found that the plaintiff could not show that Taco Bell was in an agency relationship with the entities that sent text messages on behalf of the Chicago Area Taco Bell Local Owners Advertising Association as part of an advertising campaign. Although Taco Bell was one of the Association's twelve members, and although Taco Bell's Marketing Fund approved and at

least partially financed the text message campaign, *Thomas*, 879 F. Supp. 2d at 1081-1083, this did not amount to control over the manner and means by which the campaign was executed. The Court noted that Taco Bell did not create or develop the message, and had nothing to do with the decision to use text messages for the campaign. *Id.* at 1085-1086. Here, by contrast, there is evidence that Defendant helped develop the scripts CTA and MOV used, that Defendant frequently reviewed recordings of the phone calls and instructed CTA and MOV on how their telemarketers could improve, and that Defendant was aware that at least MOV was using an automated telephone dialing system. This is a greater degree of control over the manner and means of the campaign than what Taco Bell exercised.

In *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, (S.D. Fla. 2013) *rev'd in part on other grounds*, 13-14008, 2014 WL 4802457 (11th Cir. Sept. 29, 2014), the Court held that a clinic and holding company could not be held liable for the TCPA violations of their third-party debt collector because all of the evidence in the record – deposition testimony from all three entities – showed that they did not exercise any control over the manner and means by which the debt collector performed. For example, the debt collector's representative testified that neither the clinic nor the holding company exercised any control over its debt collection methods, that it alone was responsible for compliance with all laws, and that it and not the clinic or holding company decided to use an automated dialing system to place its calls. *Mais*, 944 F. Supp. 2d at 1244. Also, the contract required the debt collector to "perform third party collection services. . . in accordance with all applicable state, federal and local laws, regulations ordinances and rules." *Id.* As a result, the Court found that "the undisputed evidence makes plain [that] Gulf Coast made all of the key decisions creating liability under the TCPA all on its own; Sheridan and Florida United did not control the relevant aspects of Gulf Coast's conduct or procedures, and, accordingly, cannot be held vicariously liable." *Id.* at 1245. Here, by contrast, Defendant exercised a degree of such control and the contract lacks any clause requiring CTA and MOV to perform in compliance with applicable laws.

Finally, in *Mey v. Pinnacle Sec., LLC*, 5:11CV47, 2012 WL 4009718 (N.D.W. Va. Sept. 12, 2012), the Court found that the defendant could not be held liable for the TCPA violations of its third-party lead generators because there was no evidence that it exercised any control over the lead generator's manner and means of generating leads. Although the lead generators informed the defendant that they used pre-recorded calls, they also warranted that they complied with the law. *Id.* at *5. The Court also noted that the evidence indicated that the defendant did "not even have access to the records and/or the calls made by its lead generators, let alone control over the same." *Id.* As noted above, the contract here lacks a compliance provision and Defendant regularly received and reviewed the call recordings and gave CTA and MOV performance-related feedback. As MOV did in this case, the lead generators in *Mey* outsourced their work to third parties with whom the defendant had no direct relationship. However, this factor is not decisive because as noted above, Defendant exercised some control over the outsourcing (it rejected one of MOV's preferred call centers) and Defendant's performance-related reviews would

have ultimately been directed at the call centers, thus raising at least the potential for some form of agency relationship to arise.

### 3. Apparent Agency Is a Triable Issue.

Whether CTA and MOV were Defendant's apparent agents are also triable issues of fact: the scripts that CTA and MOV used, and that Defendant itself either authored or approved, identified Defendant by name. A jury could reasonably conclude that authorizing CTA and MOV to name Defendant during their phone calls amounts to an affirmative manifestation from Defendant to Plaintiffs – albeit an indirect one – that could create agency by apparent authority.

### 4. Ratification Is a Triable Issue.

Defendant presents its argument about agency by ratification in a footnote and with little application of the law to the facts of this case. *See* Mot. p. 23, fn. 16. But Defendant's primary argument is that agency by ratification fails as a theory because Plaintiffs cannot establish that an agency relationship already existed. As discussed above, however, the Court rejects this premise because whether Defendant and CTA and MOV were in an agency relationship is a triable issue. Thus, agency by ratification is still an available theory. The remainder of Defendant's argument consists of a statement of the elements of ratification and a conclusion that Plaintiff cannot establish them. This is not sufficient to satisfy Defendant's burden on a motion for summary judgment. Having found that classical agency is a triable issue, the Court also finds that ratification is a triable issue.

### C. Defendant Has Not Established that it is Entitled to Safe Harbor Protection.

The TCPA provides an affirmative defense for companies that have "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under [subsection (c)]." 47 U.S.C. § 227(c)(5). Defendant's assertion of this defense relies substantially on is argument that it and CTA and MOV were not an in agency relationship, and therefore, its level of control over their processes was limited. The Court's finding that agency is a triable issue therefore undercuts much of Defendant's safe harbor argument. Defendant also relies on its position that its contracts with CTA and MOV required them to warrant that they were in compliance with all applicable law, but as discussed above, the contracts contain no language requiring them to perform their contracts in compliance with law.

Defendant also claims that it took several steps to ensure that phone numbers on the do-not-call registry were not called. However, the TCPA regulations require an entity to take certain steps to secure safe harbor protection with respect to do-not-call violations. In particular, an entity can avoid liability only if "[i]t can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets the following

standards:"

> (A) Written procedures. It has established and implemented written procedures to comply with the national do-not-call rules;
> (B) Training of personnel. It has trained its personnel, and any entity assisting in its compliance, in procedures established pursuant to the national do-not-call rules;
> (C) Recording. It has maintained and recorded a list of telephone numbers that the seller may not contact;
> (D) Accessing the national do-not-call database. It uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process.

47 C.F.R. § 64.1200.

Defendant has simply not addressed these elements and therefore has not met its summary judgment burden. The Reply does not address the safe harbor argument at all, thus suggesting Defendant abandoned it for purposes of this Motion.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion for Summary Judgment.

**IT IS SO ORDERED.**