1  Gretchen M. Nelson, CSB #112566
   Email:  gnelson@kreindler.com
2  KREINDLER & KREINDLER
3  707 Wilshire Boulevard, Suite 3600
   Los Angeles, California 90017
4  Telephone:  (213) 622-6469
5  Facsimile:  (213) 622-6019

6  [Additional counsel appearing on signature page]
7
8  *Attorneys for Plaintiffs and the Proposed Class*

9             UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11 SHAHAR LUSHE and WILLIAM
   YOUNGBLOOD, individually and on          NO. CV13−07632 AB (PJWx)
12 behalf of all others similarly situated,
                                            **MEMORANDUM OF POINTS**
13                    Plaintiffs,            **AND AUTHORITIES IN**
                                            **SUPPORT OF PLAINTIFFS'**
14         v.                               **MOTION FOR FINAL**
15                                          **APPROVAL OF CLASS ACTION**
   VERENGO, INC. d/b/a VERENGO             **SETTLEMENT**
16 SOLAR,
                                            HON. ANDRÉ BIROTTE JR.
17                    Defendant.
18                                          Complaint Filed:  October 16, 2013

19                                          DATE:          May 2, 2016
20                                          TIME:          10:00 a.m.
21                                          COURTROOM:  4 Spring Street
                                                        Second Floor
22
23
24
25
26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. CV13−07632 AB (PJWx)

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF FACTS ..........................................................................2

      A.    The TCPA Claims ...................................................................2

      B.    Plaintiffs Thoroughly Investigated and Litigated the TCPA Claims ......................................................................................2

      C.    The Parties Mediated After Engaging in Significant Classwide Discovery .................................................................3

      D.    The Proposed Settlement ........................................................4

            1.    The Settlement Class .....................................................4

            2.    Prospective Relief for All Class Members ...............4

            3.    Monetary Relief for Settlement Class Members ......5

            4.    *Cy Pres* Distributions ..................................................5

            5.    Class Release ..................................................................6

            6.    Attorneys' Fees and Costs and Class Representative Service Awards ...............................................................6

III.  CLASS NOTICE HAS BEEN DISSEMINATED ....................................6

      A.    Direct Mail and Email Notice ...............................................6

      B.    CAFA Notice .........................................................................7

      C.    Settlement Website and Toll-Free Number ...........................7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - i
CASE NO. CV13−07632 AB (PJWx)

D.    Online Publication Notice ...................................................7

E.    Settlement Administration Costs.........................................8

IV.  CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT.......................................................................8

V.   ARGUMENT AND AUTHORITY .................................................8

A.    The Class Action Settlement Approval Process ..................8

B.    The Settlement Satisfies the Criteria for Final Approval...................9

1.    The Strength of Plaintiffs' Case.............................10

2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation.................................12

3.    The Risk of Certifying and Maintaining Class Action Status Though Trial.....................................13

4.    The Amount Offered in Settlement .......................14

5.    The Extent of Discovery Completed and the Stage of the Proceedings .........................................16

6.    The Experience and Views of Counsel...................16

7.    The Presence of a Governmental Participant..........17

8.    The Reaction of Settlement Class Members..........17

C.    The Settlement is the Result of Informed, Arm's-Length Negotiations....................................18

D.    The Settlement Class Should Be Finally Certified ..........20

VI.  CONCLUSION.........................................................................20

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
   No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012)..................14, 15

*Barani v. Wells Fargo Bank, N.A.*,
   No. 12CV2999-GPC (KSC), 2014 WL 1389329 (S.D. Cal.
   Apr. 9, 2014)..............................................................14

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) ................................................13

*Charvat v. NMP, LLC*,
   656 F.3d 440 (6th Cir. 2011) ........................................................12

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................9, 10, 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992).......................................8, 9, 17, 18

*Desai v. ADT Sec. Servs., Inc.*,
   Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013)....................................15

*Estrada v. iYogi, Inc.*,
   No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal.
   Oct. 6, 2015) ............................................................14

*Fulford v. Logitech, Inc.*,
   No. C-08-2041-MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010)...........13

*Gannon v. Network Tel. Servs., Inc.*,
   No. CV 12–9777–RGK (PJWx), 2013 WL 2450199
   (C.D. Cal. June 5, 2013) ...............................................13

*Garner v. State Farm Auto Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal.
    April 22, 2010) ............................................................................17

*Garret, et al. v. Sharps Compliance, Inc.*,
    Case No. 1:10-cv-04030 (N.D. Ill. Feb. 23, 2012) .....................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2010) ........................................18, 19, 20

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................16

*In re Online DVD*,
    779 F.3d 934 (2015) .....................................................................19

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) .............17

*Mey v. Monitronics Intern., Inc.*,
    959 F. Supp. 2d 927 (N.D. W.Va. 2013) .....................................11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...........................................9, 10, 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .......................................................18

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*,
    No. 3:10-cv-1777 AJB (NLS), 2012 WL 3991734 (S.D. Cal.
    Aug. 27, 2012) .............................................................................14

*Siding and Insulation Co. v. Combined Ins. Group Ltd Inc.*,
    No. 11-1062, 2014 WL 1577465 (N.D. Ohio April 17, 2014) ....11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................10

*Steinfeld v. Discover Fin. Servs.*,
 No. C 12-01118 (N.D. Cal. Mar. 10, 2014) .................................................... 14

## FEDERAL STATUTES

28 U.S.C. § 1715 ............................................................................................ 7, 17

47 U.S.C. § 227(b)(3) ...................................................................................... 2, 15

## FEDERAL RULES

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 10

## OTHER AUTHORITIES

4 *Newberg on Class Actions* § 11.25 (4th Ed. 2002) ............................................. 9

4 *Newberg on Class Actions* § 11.41 (4th Ed. 2002) ............................................. 8

*In re Joint Petition filed by Dish Network LLC*,
 28 FCC Rcd. 6574 (2013) ......................................................................... 11, 12

*Manual for Complex Litigation* (Fourth) (2004) § 21.63 ....................................... 9

# I.  INTRODUCTION

Plaintiffs and Class Counsel have achieved an excellent result with a Settlement that provides substantial benefits to Settlement Class Members who were harassed and annoyed by Verengo's robocalls.  The Settlement establishes a common fund of $2,365,000 for the benefit of Settlement Class Members.  The Settlement also obligates Verengo to ensure that its vendors are not using an automatic telephone dialing system or an artificial or prerecorded voice to generate leads by telephone without the express consent of the called party.  Further, the Settlement requires Verengo to ensure that its vendors identify and exclude from calling lists all telephone numbers registered on the Federal Do-Not-Call Registry unless they have consent.

The Settlement Plaintiffs achieved is fair, adequate, and reasonable, and merits final approval.  Class members agree: out of a Class estimated at over 340,000 individuals, just 12 opted out and just one objected to the Settlement.[1] Declaration of Eric Robin ("Robin Decl.") ¶¶ 24 – 25.  By contrast, more than 26,000 have filed claims for monetary relief.  *Id.* ¶ 22.

Accordingly, Plaintiffs request that the Court grant final approval to the Settlement by: (1) approving the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) finally certifying the Settlement Class; (4) granting Class Counsel $591,250 in attorneys' fees and $31,443.44 in costs; and (5) approving a service award of $2,500 each to the two Class Representatives.

---

[1] Plaintiffs address the concerns raised by this objector, and a second objector who objects only to Class Counsel's fee request, in Plaintiffs' Response to Objections and Reply in Support of Motion for Attorneys' Fees and Costs and for Service Awards.  *See* Dkt. No. 134.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 1
CASE NO. CV13−07632 AB (PJWx)

## II.  STATEMENT OF FACTS

**A.    The TCPA Claims**

Plaintiff Lushe filed this case in 2013 after he received an unwanted, unauthorized call on his cellular telephone, which he claims was made on Verengo's behalf.  *See* Dkt. No. 1.  Lushe alleges that one of Verengo's lead generators used an automatic dialing system to leave a pre-recorded message on his cellular telephone.  *Id*.  Shortly thereafter, Lushe learned that prerecorded, autodialed calls not only were placed to cell phones, but also to residential land lines, and to telephone numbers on the National Do-Not-Call Registry.  *See* Dkt. Nos. 21, 30.  Lushe successfully moved to amend his complaint, adding Plaintiff Youngblood, who alleges that he received a prerecorded message from a lead generator calling on Verengo's behalf to his residential telephone line, when his telephone number was listed on the National Do-Not-Call Registry.  *See* Dkt. Nos. 21, 30, 32.

Plaintiffs allege Verengo engaged in a systematic practice of calling consumers' cell phones through the use of automatic telephone dialing systems and/or an artificial or prerecorded voice without their prior express consent, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A).  Plaintiffs further allege Verengo engaged in a common course of calling telephone numbers registered on the National Do-Not-Call Registry, in violation of 47 U.S.C. § 227(c)(5).

**B.    Plaintiffs Thoroughly Investigated and Litigated the TCPA Claims**

Plaintiffs thoroughly researched Verengo's practices and their legal claims prior to filing suit.  Plaintiffs engaged in extensive litigation, including propounding written discovery, deposing multiple key witnesses, issuing third party discovery, and reviewing thousands of pages of documents.  *See* Dkt. No. 128-2 ¶¶ 19 – 20.  Verengo's failure to produce classwide discovery, and resistance

to Plaintiffs' discovery of its vendors, led to multiple discovery conferences between the parties, and forced Plaintiffs to bring a motion to compel this information.  *See* Dkt. No. 113.

The parties also engaged in motion work to address key legal issues.  For example, at the time of settlement, Plaintiffs had responded to Verengo's motion for summary judgment on the issue of whether it could be vicariously liable for calls made on the company's behalf by third party lead generators.  *See* Dkt. No. 45.  The Court denied Verengo's motion without prejudice, finding it was "incompletely presented" and that there were "triable issues of fact."  Dkt. No. 78.

**C.      The Parties Mediated After Engaging in Significant Classwide Discovery**

The parties participated in mediation on March 3, 2015, before experienced JAMS mediator, Bruce Friedman.  During the mediation session, the parties discussed their relative views on the law and the facts, the strengths of their cases, and potential relief for the proposed Class.  *See* Dkt. No. 128-2 ¶¶ 2 – 5.  Although the case did not resolve on the day of mediation, the parties engaged in continued negotiations over the following days and, for several months, the parties jointly employed formal and informal confirmatory discovery techniques.  *Id*. ¶ 4.  The records obtained through those efforts, both from another third party lead generator, and from Verengo's own records, established a Settlement Class that was larger than the parties estimated at the time of their initial settlement.  Dkt. No. 128-2 ¶¶ 2 – 5.  As a result, Plaintiffs refused to go forward with the Settlement until Verengo had agreed to pay an additional $240,000 into the settlement fund. These settlement negotiations were highly adversarial, non-collusive, and at arm's length.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 3
CASE NO. CV13−07632 AB (PJWx)

**D.    The Proposed Settlement**

The Settlement's terms were summarized in Plaintiffs' preliminary approval papers (Dkt. Nos. 128 and 128-2), are contained in the Settlement Agreement (Dkt. No. 128-2, Ex. 1), and are again summarized below for the Court's convenience.

1.    The Settlement Class

The Settlement Class is comprised of:

> All persons to whom, on or after October 16, 2009 through the date of Preliminary Approval, Verengo or any of its affiliates or subsidiaries, or any entity acting on its behalf, or any entity contracted to provide leads to Verengo, placed a non-emergency telephone call to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice, to a residential line using an artificial or prerecorded voice, or to a telephone number registered on the National Do-Not-Call registry, without the consent of such person.

Settlement Agreement § II.A.31.

Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, as well as all persons who validly request exclusion from the Settlement Class. *Id*.

The confirmatory discovery and data provided by Verengo confirms that approximately 346,837 persons received calls from or on behalf of Verengo. *See* Robin Decl. ¶ 9.

2.    Prospective Relief for All Class Members

The Settlement includes prospective practice changes designed to protect Settlement Class Members from receiving automated calls in the future. Specifically, the Settlement requires Verengo to ensure that its lead generators are complying with the TCPA, by ensuring that its vendors are not using an automatic

telephone dialing system or an artificial or prerecorded voice to generate leads by telephone without the express consent of the called party.  Further, the Settlement requires Verengo to ensure that its vendors identify and exclude from calling lists all telephone numbers registered on the National Do-Not-Call Registry absent consent.  Settlement § III.F.4.

### 3.    Monetary Relief for Settlement Class Members

The Settlement Agreement also requires Verengo to pay $2,365,000 as consideration for the settlement (the "Settlement Fund").  Settlement § III.C. Settlement Class Members shall be entitled to make a claim upon the Settlement Fund for a Settlement Award, which will be paid to eligible Settlement Class Members on a claims-made basis.  Awards will be made on a *pro rata* basis after deducting from the Fund all Settlement Costs, including: (1) any award of attorneys' fees and costs approved by the Court; (2) any incentive awards to Plaintiffs approved by the Court; (3) all costs of printing and providing notice to the Settlement Class; (4) all costs of administering the Settlement; and (5) all fees, expenses, and other costs of the Claims Administrator.  *Id*.  No monies will revert to Verengo.

### 4.    *Cy Pres* Distributions

In the event that any Settlement payment checks to Class Members remain uncashed more than 120 days after their issuance, the money will be distributed "*cy pres*" in equal parts to (i) the Coordinated Advice and Referral Program for Legal Services ("CARPLS"), a non-profit organization that provides pro bono legal services, and (ii) the Lawyers' Committee for Civil Rights Under Law ("LCCRUL").  *Id*. § III.F.3.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 5
CASE NO. CV13−07632 AB (PJWx)

5.    <u>Class Release</u>

In exchange for the benefits allowed under the Settlement, Class Members who do not opt out will provide a release tailored to the practices at issue in this case.  Specifically, they will release all claims "that relate to or arise out of the alleged improper use of an 'automatic telephone dialing system' and/or 'artificial or prerecorded voice'… or telephone calls to numbers registered on the Do Not Call Registry."  Settlement § III.N.

6.    <u>Attorneys' Fees and Costs and Class Representative Service Awards</u>

Class Counsel have separately moved the Court for reimbursement of their out-of-pocket litigation expenses and an award of attorneys' fees in the amount of 25 percent of the Settlement Fund.  *See* Dkt. No. 131.  Class Counsel have also requested service awards to the two Class Representatives in the amount of $2,500 each, or $5,000 total.  The enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs or service awards. Settlement §§ III.G – H.

### III.  CLASS NOTICE HAS BEEN DISSEMINATED

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.  Dkt. No. 130 at ¶ 7.  KCC fully implemented the notice plan approved by this Court.  *See* Robin Decl. ¶¶ 5 -21.

**A.    Direct Mail and Email Notice**

Beginning on January 22, 2016, and continuing through April 14, 2016, KCC disseminated 327,778 notice and claims forms.  *Id*. ¶¶ 14, 15.  KCC sent notice and claim forms via first class U.S. Mail to 317,041 Class Members.  *Id*. ¶ 14.  During the notice process, 22,096 notices were returned as undeliverable.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 6
CASE NO. CV13−07632 AB (PJWx)

KCC used its national data providers to attempt to locate a new address for each returned notice, and successfully updated addresses for 13,484 Class Members and also mailed out 343 notices that had been returned with forwarding addresses. *Id.* ¶¶ 15 – 16. In addition, KCC also sent notices via email to 10,737 Class Members. *Id.* ¶ 14. As of April 14, 2016, KCC's email server registered 8,947 emails (83.33%) as having been successfully delivered and 1,790 (16.67%) a undeliverable. *Id.* ¶ 17. KCC estimates this individual notice effort alone reached approximately 88.9% of the Class. *Id.* ¶ 18.

**B.    CAFA Notice**

In compliance with the notice plan, KCC also provided notice of the Settlement to officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Robin Decl. ¶¶ 4 – 7.

**C.    Settlement Website and Toll-Free Number**

On January 20, 2016, KCC established a Settlement Website (www.VerengoTCPASettlement.com) where claims could be submitted electronically. *Id.* ¶ 10. At the website, Class Members could also access information and answers to anticipated frequently-asked questions regarding the Settlement. *Id.* As of April 14, 2016, there were 16,209 unique visits to the website. *Id.* In addition, KCC timely established, on or about January 19, 2016, a toll-free number (1-877-219-9784) to allow Class Members to obtain additional information regarding the Settlement through an Interactive Voice Response system. *Id.* ¶ 11. As of April 18, 2016, KCC had received 1,762 telephone calls inquiring about the case or the Settlement. *Id.*

**D.    Online Publication Notice**

To further extend reach among the Class, KCC purchased and caused to be displayed 23 million unique internet impressions targeted to adults 18 years of age

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 7
CASE NO. CV13−07632 AB (PJWx)

or older on Run of Network websites.  *Id.* ¶ 19.  The internet banners, which contained an embedded link to the case website, were displayed on website from January 20, 2016 through and including February 20, 2016.  The internet impressions delivered a total of 23,290,130 unique impressions.  *Id.* ¶ 19, Ex. D. Combined, the individual notice effort and internet effort reached approximately 90% of the Class.  *Id.* ¶ 20.

**E.    Settlement Administration Costs**

KCC agreed to charge $341,500 for its notice and claims administration work.  *See* Dkt. No. 128-2 ¶ 27.

## IV.  CLASS MEMBERS HAVE RESPONDED POSITIVELY TO THE SETTLEMENT

The response from the Class has been very positive.  The deadline for Class Members to submit claims was March 21, 2016.  As of April 14, 2016, 26,806 Class Members have filed claims.  *See* Robin Decl. ¶ 22.  The March 21, 2016 deadline to opt-out or object to the Settlement has also passed, and just 12 persons opted out and one objected to the Settlement.  *Id.* ¶¶ 9, 24.

## V.  ARGUMENT AND AUTHORITY

**A.    The Class Action Settlement Approval Process**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 *Newberg on Class Actions* § 11.41 (4th Ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here—individual litigation—would

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 8
CASE NO. CV13−07632 AB (PJWx)

require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable.  Thus, the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*") describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests.  4 Newberg § 11.25.

The first two steps in this process have occurred.  With this motion, Plaintiffs respectfully request that the Court take the third and final step in the process by granting final approval of the Settlement.

**B.    The Settlement Satisfies the Criteria for Final Approval**

It is well settled that the law favors the compromise and settlement of class action suits.  *See Churchill Village, LLC v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 9
CASE NO. CV13−07632 AB (PJWx)

("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation….").

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When assessing a proposed settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

Courts in the Ninth Circuit consider a number of factors in evaluating class settlements, recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Ninth Circuit has set forth the following list of factors to be considered: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 575.

Applied to this case, these factors support final approval of the Settlement.

1.   The Strength of Plaintiffs' Case

Plaintiffs continue to believe that their claims against Verengo have merit and that they could make a compelling case if their claims were tried. If Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 10
CASE NO. CV13−07632 AB (PJWx)

were to prevail, Verengo could face hefty statutory penalties. Nevertheless, it is apparent that Plaintiffs and the Class would face a number of difficult challenges if the litigation were to continue.

The primary issue in this case is whether Verengo can be held vicariously liable for calls placed by third parties. Plaintiffs maintain that Verengo is liable under the TCPA for the telemarketing calls made by third party vendors that Verengo hired to solicit business on its behalf. In particular, Plaintiffs assert that Verengo may be held liable under the TCPA on the basis of broad theories of agency liability, including formal agency, apparent authority, and/or ratification. The Federal Communications Commission ("FCC") and numerous courts recognize that it undermines the purposes of the TCPA to permit a company to outsource its telemarketing and accept the benefits of those telemarketing efforts, and to ignore TCPA compliance of hired vendors the party directs and controls. *See, e.g., In re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6574, 6587 (2013) ("FCC 2013 Ruling") (finding that applying vicarious liability principles to entities that use third party telemarketers "reasonably advance the goals of the TCPA"); *Siding and Insulation Co. v. Combined Ins. Group Ltd Inc.*, No. 11-1062, 2014 WL 1577465, at *3 (N.D. Ohio April 17, 2014) (finding material disputed questions of fact existed regarding whether a third party fax transmitter acted with apparent authority); *Mey v. Monitronics Intern., Inc.*, 959 F. Supp. 2d 927, 933 (N.D. W.Va. 2013) (finding that the defendant "cannot evade TCPA liability simply by protesting" that because it did not make calls directly it was immune from liability stemming from wrongs that a telemarketer performed on its behalf).

Verengo, however, denies responsibility for calls initiated by third party lead generators, and has repeatedly and aggressively argued that it should not be vicariously liable under agency theories. *See* Dkt. No. 42-1. Verengo maintains

that it did not make the calls and did not have the right to control the manner or means in which the calls at issue were made or how the call lists were compiled. *Id.* Verengo also asserts that it "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of" the national do-not-call regulations. *Id.* at 24:2-11. As such, Verengo argues it is entitled to a "safe harbor," that would exempt it from the illegal solicitations made on its behalf by "unaffiliated" telemarketers. *Id.* (citing *In re Joint Petition Filed by Dish Network LLC, et al.*, 28 F.C.C.R. at 6602; *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011)). Even if Plaintiffs prevailed on their agency theory, Verengo would likely appeal the decision, which would result in substantial delay. The Settlement provides substantial relief to Class Members without further delay.

    2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Another factor in assessing the fairness of the proposed Settlement is the complexity, expense, and likely duration of this lawsuit had settlement not been achieved. *Officers for Justice*, 688 F.2d at 625. Although the parties had completed substantial discovery at the time they reached agreement, additional depositions, expert work, expert depositions, and extensive motion work, including Plaintiffs' motion for class certification, remained. Dkt. No. 128-2 ¶ 25. Verengo expressed every intention of continuing a spirited defense, absent a settlement. Class Counsel have a significant amount of experience in consumer class actions, including TCPA actions, and know from their own experience that any case involving a class of consumers can, and often does, lead to costly litigation that goes on for years. *Id.* at ¶¶ 6-18.

Moreover, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiffs prevailed at trial, Verengo would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Settlement Class Members. *See Fulford v. Logitech, Inc.*, No. C-08-2041-MMC, 2010 WL 807448, at *8 (N.D. Cal. Mar. 5, 2010) ("[L]iability and damages issues—and the outcome of any appeals that would likely follow if the Class were successful at trial—present substantial risks and delays for Class member recovery.").

Finally, there was also a risk that Plaintiffs would be unable to execute on a judgment that reflected the extent of Verengo's liability. Plaintiffs considered information regarding Verengo's ability to pay and determined that Verengo's financial situation would likely cause a huge settlement or judgment to go unpaid. *See* Dkt. No. 128-2 ¶ 24. By contrast, the Settlement provides substantial relief to Settlement Class Members without delay.

### 3.   The Risk of Certifying and Maintaining Class Action Status Though Trial

While Plaintiffs continue to believe that class certification would be achievable, there was no guarantee. Courts have either granted or denied certification in TCPA cases depending upon the facts of the case. *Compare Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) (certifying TCPA class) *with Gannon v. Network Tel. Servs., Inc.*, No. CV 12–9777–RGK (PJWx), 2013 WL 2450199 (C.D. Cal. June 5, 2013) (denying class certification of TCPA class). If the Court were to refuse to certify the class for litigation purposes, only the named Plaintiffs would be able to pursue their claims.

4.   <u>The Amount Offered in Settlement</u>

The Settlement Agreement requires Verengo to pay $2,365,000 into a non-reversionary common Settlement Fund out of which claimants will receive their pro rata share.  Settlement §§ II.A.19, III.F.  After deducting the requested Court-awarded fees, litigation expenses, settlement administration costs, and the Court-awarded class representative incentive awards, the net proceeds to the Settlement Class are estimated to be $1,406,346.

The relief obtained is substantial in proportion to the size of the Settlement Class, which has an estimate 346,837 members, and is in line with approved TCPA settlements.  *See, e.g.*, *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC (KSC), 2014 WL 1389329, at *6 (S.D. Cal. Apr. 9, 2014) (granting preliminary approval for $950,000 TCPA settlement with 76,189 class members); *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:10-cv-1777 AJB (NLS), 2012 WL 3991734, at *8 (S.D. Cal. Aug. 27, 2012) (recommending preliminary approval for $525,000 TCPA settlement with 618,000 class members).

Each eligible claimant will receive approximately $52.[2]  The estimated individual awards are in line with other TCPA settlements.  *See, e.g., Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No.

---

[2] After deducting $591,250 in requested fees, $20,904.03 in requested out-of-pocket costs, $5,000 ($2,500 each) for service awards to the Class Representatives, and $341,500 in notice costs, the remaining $1,406,346 (the Net Proceeds) will be used to pay cash awards directly to eligible claimants.  The Net Proceeds, $1,406,346, divided by 26,806 (Potentially Eligible Claims) equals $52.46.

137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

Class Counsel acknowledge that under the Settlement, Class Members will not recover the full measure of statutory damages potentially available to them. Class Members theoretically could recover $500, or up to $1,500, in statutory damages for each violation of the TCPA if they were to prevail in litigation. *See* 47 U.S.C. § 227(b)(3)(B) (permitting $500 in statutory damages for each violation of the TCPA); 47 U.S.C. § 227(b)(3)(C) (permitting $1,500 for "willful" TCPA violations). However, Class Counsel have reviewed financials that show Verengo's financial situation would likely cause a huge settlement or judgment to go unpaid. Dkt. No. 128-2 ¶ 24. Given Plaintiffs' concerns about Defendant's inability to pay any more than the amount achieved through settlement, this factor favors settlement approval.

The Settlement also treats all Settlement Class Members equally and fairly. Every Settlement Class Member who made a valid claim will receive an equal, *pro rata* payment. Settlement § III.F.

Finally, the Settlement also provides for prospective relief, requiring Verengo to ensure that its vendors are not using an automatic telephone dialing system or an artificial or prerecorded voice to generate leads by telephone without the express consent of the called party. Settlement § III.F.4. The Settlement also requires Verengo to ensure that its vendors identify and exclude from calling lists all telephone numbers registered on the National Do-Not-Call Registry absent express consent. *Id.*

In short, the Settlement provides for substantial monetary relief to Settlement Class Members and requires Verengo to change the very practices which Plaintiffs allege give rise to their claims under the TCPA.  This factor favors final approval of the Settlement.

5.    The Extent of Discovery Completed and the Stage of the Proceedings

The Settlement was informed by Class Counsel's thorough investigation and analysis of the factual and legal issues involved.  The parties engaged in extensive discovery.  Plaintiffs had propounded multiple sets of written discovery requests targeting (1) Verengo's telemarketing policies and practices; (2) the identities of any vendors with whom Verengo contracted to place telemarketing calls; and (3) the list of robocalls made on Verengo's behalf.  Dkt. No. 128-2 ¶ 19.  Plaintiffs also subpoenaed documents and data from third parties, reviewed thousands of pages of documents, and deposed key witnesses, including Verengo's Director of Call Center Operations and one of Verengo's lead generators.  *Id*. ¶ 20.

Although work remained by the time the parties agreed to mediate, Class Counsel were well-informed about the strengths and weaknesses of their case at the time they entered mediation.  Thus, this factor favors final approval of the Settlement.

6.    The Experience and Views of Counsel

Class Counsel are particularly experienced in litigating TCPA claims, and had taken a keen understanding of the legal and factual issues involved in this litigation.  Dkt. No. 128-2 ¶¶ 6 – 18.  Class Counsel fully endorse the Settlement as fair, adequate, and reasonable.  *Id*. ¶ 24.  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of the Court approving the Settlement.  *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v.*

*Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

### 7.   The Presence of a Governmental Participant

No governmental entity is a party to this action.  However, in compliance with the notice provision of CAFA 28 U.S.C. § 1715, notice of the Settlement has been provided to the Attorneys General of each of the fifty states, the District of Columbia, and each of the five recognized U.S. Territories.  *See* Robin Decl. ¶¶ 4 – 6.

"Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to class action settlement, CAFA presumes that, once put on notice, either state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *14 (N.D. Cal. April 22, 2010).  Not one governmental entity has objected to the Settlement.  *See* Robin Decl. ¶ 7.  Thus, this factor favors approval.

### 8.   The Reaction of Settlement Class Members

Class member reaction to a proposed settlement is an important factor in determining whether a settlement is fair, adequate, and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).  A court may infer that a class action is settlement is fair, adequate, and reasonable even when a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 17
CASE NO. CV13−07632 AB (PJWx)

large number of class members object to it.  *See*, *e.g.*, *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class members objected and 500 opted out).

Here, Class Member response to the Settlement has been decisively positive. With a Class estimated at 346,837, the single objector, whose objections are addressed separately in Plaintiffs' Response to Objections and Reply in Support of Motion for Attorneys' Fees and Costs and for Service Awards, represents just 0.00028% of the Class, and the 12 opt-outs just 0.003%.  *See* Robin Decl. ¶¶ 24 – 25.  The scarcity of objections and opt-outs indicates broad, Class-wide support for the Settlement and supports approval.  *See City of Seattle*, 955 F.2d at 1275-76, 1291-96 (upholding trial court's grant of final approval over Class member objections).

In short, the reaction of the Settlement Class has been overwhelmingly positive and weighs in favor of final approval.  Moreover, the limited number of objections are all without merit.  *See* Dkt. No. 134 (Plaintiffs' Response to Objections and Reply in Support of Motion for Attorneys' Fees and Costs and for Service Awards).  Therefore, Plaintiffs respectfully request the Court overrule the objections and approve the Settlement.

**C.  The Settlement is the Result of Informed, Arm's-Length Negotiations**

In addition to considering the above factors, the Ninth Circuit has indicated that the court should carefully review the settlement for any signs of collusion or conflicts of interest.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2010); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (the Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."  The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion

between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted); *see also In re Online DVD*, 779 F.3d 934, 944 (2015) (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946).

The Settlement Agreement is the result of arm's-length negotiations between experienced attorneys for both parties who are highly familiar with class action litigation in general and with the legal and factual issues of this case in particular. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of TCPA cases similar to this case.  Dkt. No. 128-2 ¶¶ 6-18.  To reach the Settlement, Plaintiffs and Defendant engaged in extensive negotiations, including mediation before experienced JAMS mediator, Bruce Friedman.  *Id.* ¶ 2. The parties exchanged detailed mediation briefs and during the mediation session discussed their relative views of the law and the facts and potential relief for the proposed class.  Prior to mediation, Verengo had produced evidence of approximately 3,000 calls that lead generators MOV and Call to Action transferred to Verengo.  At mediation, Verengo provided evidence of an additional 53,000 leads transferred to Verengo by third parties Verengo hired.  *Id.* ¶ 3.  The case did not resolve on the day of mediation, but the parties engaged in continued negotiations over the following days.  *Id.*  The mediation session and continued discussions resulted in an agreement on the major terms of the Settlement.  *Id.* ¶ 3.

For several months, the parties jointly employed formal and informal discovery efforts to determine whether the lead generators Verengo hired retained call records for phone numbers called, but never transferred to Verengo as leads.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT - 19
CASE NO. CV13−07632 AB (PJWx)

As a result of those efforts, the parties discovered additional class members, which triggered subsequent settlement negotiations and Verengo's agreement to pay additional sums to settle the larger Settlement Class. *Id.* ¶¶ 4, 5.

The Settlement exhibits none of the "warning" signs that indicate possible collusion. *See In re Bluetooth*, 654 F.3d at 946–47. Counsel have not requested a "disproportionate distribution of the settlement," but rather seek in attorneys' fees the Ninth Circuit benchmark of 25% of the total Settlement amount. Settlement approval does not depend upon approval of Class Counsel's fees and the Settlement is non-reversionary. Settlement § III.F. In negotiating the Settlement Agreement, counsel had the benefit of years of experience litigating class actions and a familiarity with the facts of this case. Dkt. No. 128-2 ¶¶ 6-18. Class Counsel's experience and recommendation, and the parties' arm's-length negotiations weigh in favor of finally approving the settlement as fair, adequate, and reasonable.

**D.   The Settlement Class Should Be Finally Certified**

In its Preliminary Approval Order, this Court granted class certification for settlement purposes only. Dkt. No. 130 at ¶ 2. For all the reasons set forth in Plaintiffs' preliminary approval briefing, the Preliminary Approval Order, their Motion for an Award of Fees, Costs, and Approval of Service Awards, and, their Response to Objections and Reply in Support of Motion for Attorneys' Fees and Costs and for Service Awards to the Class Representatives, the Court should finally certify the Settlement Class.

## VI.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) approving the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) finally certifying the

Settlement Class; (4) granting Class Counsel $591,250 in attorneys' fees and
$31,443.44 in costs; and (5) approving a service award of $2,500 each to the two
Class Representatives.

      RESPECTFULLY SUBMITTED AND DATED this 18th day of April,
2016.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, CSB #178181
    Beth E. Terrell, CSB #178181
    Email: bterrell@terrellmarshall.com
    Mary B. Reiten, CSB #203142
    Email: mreiten@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Gretchen M. Nelson, CSB #112566
    Email: gnelson@kreindler.com
    KREINDLER & KREINDLER
    707 Wilshire Boulevard, Suite 3600
    Los Angeles, California 90017
    Telephone: (213) 622-6469
    Facsimile: (213) 622-6019

    *Attorneys for Plaintiffs and the Proposed Class*

1

## CERTIFICATE OF SERVICE

2

3     I, Beth E. Terrell, hereby certify that on April 18, 2016, I electronically filed

the foregoing with the Clerk of the Court using the CM/ECF system which will

4

send notification of such filing to the following:

5

Joshua M. Briones, CSB #205293

6     Email:  jbriones@blankrome.com
Ana Tagvoryan, CSB #246536

7     Email:  atagvoryan@blankrome.com
Shirley Kong, CSB #252838

8     Email:  skong@blankrome.com
Shona Brockway

9     Email:  sbrockway@blankrome.com

10    BLANK ROME LLP
2029 Century Park East, 6th Floor

11    Los Angeles, California 90067
Telephone:  (424) 239-3400

12    Facsimile:  (424) 239-3434

13    *Attorneys for Defendant*

14
DATED this 18th day of April, 2016.

15
TERRELL MARSHALL LAW GROUP PLLC

16

17

18    By:  /s/ Beth E. Terrell, CSB 178181
Beth E. Terrell, CSB #178181

19    Email:  bterrell@terrellmarshall.com

20    936 North 34th Street, Suite 300
Seattle, Washington  98103-8869

21    Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

22

23    *Attorneys for Plaintiffs and the Proposed Class*

24

25

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT - 22
CASE NO. CV13−07632 AB (PJWx)